```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF OKLAHOMA
```

C2 COMMUNICATIONS TECHNOLOGIES, INC.,   )
                                        )
              Plaintiff,                )
                                        )
v.                                      ) No. CIV-09-314-FHS
                                        )
PAETEC CORPORATION,                     )
                                        )
              Defendant.                )

## OPINION AND ORDER

Defendant, PAETEC Corporation ("PAETEC"), has moved the Court to transfer this patent infringement action to the United States District Court for the Western District of New York or, in the alternative, to the United States District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). PAETEC's request for transfer is part of its Amended Motion to Sever and Transfer Venue (Doc. No. 59). In its original Motion to Transfer Venue (Doc. No. 41), PAETEC, along with then co-defendants Matrix Telecom, Inc. ("Matrix") and Windstream Corporation ("Windstream"), sought a transfer to the Eastern District of Texas based, in part, on the location of the Defendants and the fact that all Defendants conducted business operations in Texas. Subsequent to the filing of the original motion to transfer, Matrix, Windstream and Defendant, TDS Telecommunications ("TDS"), Corp., were dismissed from this action by C2. Thus, the only remaining defendant is PAETEC, and it now argues for the Western District of New York as the appropriate transferee court, with the Eastern District of Texas as an alternate forum for transfer. PAETEC's request for severance is now moot as Matrix, Windstream, and TDS have all been dismissed, leaving PAETEC as the lone defendant.

On August 14, 2009, C2 commenced this action by filing its Complaint alleging PAETEC violated the patent C2 now owns, identified as the '373 Patent, entitled "Method and Apparatus for Implementing a Computer Network Internet Telephone System."[1] C2 alleges "[t]he '373 Patent claims methods and systems for routing a full duplex telephone call between a first telephone set and a second telephone set using a public computer network, such as a portion of the Internet, as at least part of a communication link connecting said first and second telephone sets." Amended Complaint, at ¶ 9. It is alleged that PAETEC "operates media gateway equipment that constitutes computer network access ports within the meaning of the '373 patent," id. at ¶ 10, and that such media gateways are being used "to connect calls between [PAETEC's] landline telephone customers over converged computer networks on which [PAETEC] also carr[ies] Internet data traffic." Id. at ¶ 11.[2] C2 alleges "[s]uch 'IP trunking' between media gateways over converged data networks constitutes infringement of one or more claims of the '373 patent." Id. at ¶ 12.

In its motion, PAETEC contends this action should be transferred to either the Western District of New York or the Eastern District of Texas under the authority of 28 U.S.C. § 1404(a). Section 1404(a) provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." This statute is the procedural

---

[1] C2 filed an Amended Complaint on October 14, 2009.

[2] PAETEC contends it is merely a holding company and it does not operate any media gateways. PAETEC asserts its subsidiaries, PAETEC Communications, Inc. and PAETEC Communications of Virginia, Inc., are the only PAETEC entities that perform the allegedly infringing call routing.

2

mechanism "allowing easy change of venue within a unified federal system." Chrysler Credit Corp. v. County Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991)(quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981)). A threshold determination under section 1404(a) is whether the action could have been filed in the transferee court. In this regard, neither C2 nor PAETEC dispute that venue is proper in both the Western District of New York and the Eastern District of Texas, and that jurisdiction would be proper in both districts.[3] Thus, the Court will now undertake its assessment of the relevant section 1404(a) factors governing transfer.

Under section 1404(a), the moving party has the burden of establishing that the action should be transferred because the existing forum is inconvenient. Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 567 (10th Cir. 1978). The Court has discretion to make determinations regarding transfer according to an "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). Various factors should be considered:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance

---

[3] PAETEC is a Delaware corporation with its principal place of business in Fairport, New York, within the Western District of New York. PAETEC provides data, voice, and other complementary services to customers throughout a large portion of the United States, including Texas, New York, and Oklahoma. In patent litigation, venue is appropriate in any judicial district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). It should also be noted that C2 is a Delaware corporation with its principal place of business in Marshall, Texas, within the Eastern District of Texas.

> of witnesses; the cost of making the necessary proof;
> questions as to the enforceability of a judgment if one
> is obtained; relative advantages and obstacles to a fair
> trial; difficulties that may arise from congested
> dockets; the possibility of the existence of questions
> arising in the area of conflict of laws; the advantage of
> having a local court determine the questions of local
> law; and, all other considerations of a practical nature
> that make a trial easy, expeditious and economical.

Chrysler Credit Corp., 928 F.2d at 1516 (citing Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)). In this case, it appears from a review of the parties' respective briefs that the determinative factors in the transfer analysis are C2's choice of forum, the convenience of the parties and witnesses, and other considerations of a practical nature that make a trial easy, expeditious and economical.

Initially, the Court rejects any attempt to transfer this action to the Western District of New York. PAETEC contends the convenience of the parties and witnesses dictates a transfer of this action to the Western District of New York because: (1) PAETEC is headquartered in the Western District of New York; (2) C2's witnesses are located in closer proximity to upstate New York[4]; and (3) PAETEC's documentary evidence and employee witnesses are located at its headquarters within the Western District of New York. In response, C2 argues that (1) its chosen forum of the Eastern District of Oklahoma should prevail over the Western District of New York because a transfer would merely shift any minor inconvenience to C2, (2) PAETEC has failed to identify, with any level of specificity, those documents and witnesses which support a claim of inconvenience by PAETEC being forced to litigate

---

[4] According to PAETEC, C2's witnesses reside in Canada, Europe, New Jersey, and New York.

in the Eastern District of Oklahoma, and (3) C2 finds it more convenient to produce the witnesses it controls in the Eastern District of Oklahoma, and those it does not control cannot be compelled to appear in either the Eastern District of Oklahoma or the Western District of New York.  The Court agrees with C2.  Given the basis for PAETEC's request for transfer to the Western District of New York - that the Western District of New York is the more convenient forum for the parties and witnesses as opposed to the Eastern District of Oklahoma - the Court concludes PAETEC has failed to satisfy its burden for transferring this action to the Western District of New York.  While it certainly would be more convenient for PAETEC to litigate this action in its home forum, the record before the Court does not establish that *all* parties and witnesses would be inconvenienced by litigating this matter in the Eastern District of Oklahoma.  Absent any reliance on the other factors in the section 1404(a) analysis by PAETEC, the Court is compelled to find that the convenience of the parties and witnesses does not dictate a transfer of this action to the Western District of New York.

PAETEC's alternative request for transfer, however, stands on different footing.  In arguing for a transfer of this action to the Eastern District of Texas, PAETEC relies on other considerations of a practical nature that make a trial easy, expeditious and economical, namely, that C2 recently litigated the '373 Patent in the Eastern District of Texas in <u>C2 Communication Technologies, Inc. v. AT&T, Inc., et al.</u>, Civil No. 2:06-CV-241 (E.D. Texas, Marshall Division)("Texas Action").[5]  This interest of justice

---

[5] PAETEC does also assert that the convenience of a key third-party witness, Alex Huang ("Huang"), would be served by a transfer to the Eastern District of Texas.  According to PAETEC, Huang, a resident of Austin, Texas, and within the subpoena power

5

consideration "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." Espino v. Top Draw Freight Sys., Inc., 713 F.Supp. 1243, 1245 (N.D. Ill. 1989).

In the Texas Action, C2 alleged various defendants infringed the '373 Patent and the case was settled during trial in September of 2008. Throughout the course of the proceedings, the Eastern District of Texas became intimately familiar with many of the issues surrounding a claim of patent infringement with respect to the '373 patent, including the validity of the patent itself and a Markman claim construction process. In a highly technical and complex case such as the instant case, a court's familiarity with many, if not, most of the procedural and substantive issues likely to arise is of pivotal importance in the section 1404(a) analysis. See In re Volkswagen of America, Inc., 566 F.3d 1349, 1351 (Fed. Cir. 2009)(in patent litigation, "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice"); see also Regents of Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1565 (Fed. Cir. 1997)("[I]n a case such as this in which several highly technical factual issues are presented and other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues."), cert. denied, 523 U.S. 1089 (1998). While these rulings would certainly not be preclusive given the different defendants in the two cases, the familiarity and expertise acquired by the Eastern District of Texas Court in the Texas Action would necessarily make the instant trial easier, and more expeditious and

---

of the Eastern District of Texas, is the inventor of a prior key art which will be used to show that the '373 patent is invalid.

6

economical.  Judicial economy is no doubt best served by having the Eastern District of Texas try this action involving the same patent as the recently litigated Texas Action.

C2's opposition to PAETEC's interest of justice argument relies on two factors for the retention of this matter in the Eastern District of Oklahoma: (1) C2's choice of the Eastern District of Oklahoma and (2) the likelihood of a more expeditious resolution of this matter in the Eastern District of Oklahoma.  It is true that C2 chose the Eastern District of Oklahoma as its forum to litigate this patent infringement claim.  Normally, a plaintiff's choice of forum is entitled to considerable deference, "[h]owever, where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum, the plaintiff's choice of forum is given reduced weight." Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F.Supp. 667, 669 (D. Kan. 1993)(citing Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 990 (E.D. N.Y. 1991); see also ROC, Inc. v. Progress Drillers, Inc., 481 F.Supp. 147, 151 (W.D. Okla. 1979)(the plaintiff's choice of forum "has reduced value where there is an absence of any significant contact by the forum state with the transactions or conduct underlying the cause of action.").  Here, no argument is made that the underlying allegations of patent infringement have any material relation to the Eastern District of Oklahoma, other than this District, like many others, serving as an appropriate venue under 28 U.S.C. § 1400(b).  Thus, although it is not entirely erased from the analysis, C2's choice of the Eastern District of Oklahoma is of limited value in the analysis.  C2's second argument based on the relative congestion of dockets and the disparity in statistical data for "time to trial" in the respective

jurisdictions is also of limited value.[6]  Given the paucity of patent infringement litigation in the Eastern District of Oklahoma and the Court's lack of exposure to many of the issues surrounding the application of patent law, the Court's initial attempt to adhere to its typical scheduling order is, most likely, overly optimistic on its part, and the scheduling dates would undoubtedly require significant adjustment as the case proceeded.  This only highlights the lack of significance attached to the cited statistics.  As noted by one court, these type of statistics are "relatively meaningless" in the section 1404(a) analysis.  <u>Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.</u>, 598 F.Supp.2d 836, 841 (N.D. Ill. 2009).  "They consist of averages for case of all types and tell the reader nothing about cases for the particular type at issue.  Specifically, these statistics say nothing at all about patent infringement cases and how quickly they proceed to trial in the two districts."  <u>Id</u>.  Thus, the asserted disparity in "time to trial" statistics between the two districts is of little significance.

Having evaluated the relevant section 1404(a) factors, with particular reliance on those associated with the interest of justice and the efficient administration of the court system, the Court finds the transfer of this action to the United States District Court for the Eastern District of Texas is warranted.  PAETEC's Amended Motion to Transfer (Doc. No. 59) is therefore granted to the extent that this action is ordered transferred to the United States District Court for the Eastern District of Texas.

---

[6] C2 contends the Eastern District of Texas schedules trials thirty months from filing while, in this case, the Court has set trial approximately eleven months from filing.

It is so ordered this 22nd day of December, 2009.

Frank H. Seay
United States District Judge
Eastern District of Oklahoma